# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CALVIN NASH,

                       Petitioner,

v.                                         Case No. 12-CV-739-JPS

JUDY SMITH,[1]

                      Respondent.              ORDER

On July 17, 2012, petitioner Calvin Nash ("Nash") filed a petition for writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2254. (Docket #1). Nash challenges his conviction for battery, disorderly conduct, criminal damage to property, and substantial battery with the intent to cause bodily harm, all as domestic abuse and as a repeat offender, for which he is now serving a term of confinement in the Oshkosh Correctional Institution. Nash presents three claims for relief, asserting that he was denied effective assistance of counsel due to: (1) counsel failing to object to admission of hearsay evidence; (2) counsel permitting an improper jury instruction regarding the jurors' use of notes; and (3) counsel permitting a written statement to be read to the jury. (Brief in Support (Docket #15) at 3-5). Nash's claims are now fully briefed and ready for resolution. As explained below, the court concludes that Nash has shown no constitutional violation and, therefore, Nash's petition for writ of habeas corpus will be denied.

---

[1]The court hereby substitutes Judy Smith, the Warden of the Oshkosh Correctional Institution, for the previous respondent, the State of Wisconsin. An incarcerated habeas petitioner's Warden is the only proper respondent in a habeas corpus case. *Hogan v. Hanks*, 97 F.3d 189, 190 (7th Cir. 1996).

1.  Background[2]

Nash's conviction followed from events involving Nash's live-in girlfriend, Connie Homman ("Homman"). According to Homman's testimony, Nash returned to live with her following a two-month absence on May 9, 2010. Over the course of the next four days, Nash hit Homman in the face and stomach, and she had bruising on her arm from blocking a punch. Homman expressed some confusion about what happened on each of the four days. However, she testified that in one instance Nash pulled a knife on her, she fled from the apartment, Nash followed her, and when she tried to call her son, Nash smashed her cell phone. She further testified that Nash hit her in the eye, causing a cut that required twenty-one stitches. Neighbors called the police, and Homman was transported to the hospital.

An emergency room nurse testified that she took photos of Homman's injuries on May 13, 2010, at the hospital. Homman's injuries included: bruising on the left side of her back, both arms, shoulder, chin, right abdomen, left elbow, right buttock, and left wrist; a "bite like mark" on her right jaw; scratches on her neck; and, a laceration over her eye. The photos were shown to the jury.

Police Officer Chad Ramos ("Ramos") testified that he was dispatched to Homman's residence at 5:30 pm on May 13, 2010, following a 911 call. Ramos testified that Homman was crying and emotional, and that she told him Nash smashed her phone. Ramos stated that he noticed Homman had bruises on her back and wrists, and that Homman told him they were from

---

[2]Facts in this Background section are relayed, some verbatim, from the Wisconsin Court of Appeals Decision, *State v. Nash*, 2011AP844-CR (Wis. Ct. App. March 6, 2012), unless otherwise attributed.

Nash hitting and punching her. Ramos picked up pieces of the cell phone from the sidewalk and grass.

Police Officer Derek Wicklund testified that he responded to a 911 call at Homman's residence at approximately 10:30 pm on May 13, 2010. Homman was "very emotional," "covered in blood," and had a large laceration above her left eye.

The jury found Nash guilty of battery, disorderly conduct, criminal damage to property, and substantial battery with the intent to cause bodily harm; the jury acquitted Nash of charges of strangulation and suffocation. Nash moved for a new trial, and his motion was denied.

Nash filed a direct appeal, raising the same three grounds for ineffective assistance of counsel as are currently before this court. The Wisconsin State Court of Appeals affirmed the trial court judgment and order in an unpublished opinion. *State v. Nash*, 2011AP844-CR (Wis. Ct. App. March 6, 2012). Nash filed a petition for review before the Wisconsin State Supreme Court; the Court denied Nash's petition. (Dockets #14-6, #14-8). Nash then filed the instant Petition in this court.

2.  Standard of Review

The standard governing constitutional claims of ineffective assistance of counsel is well-established: to prevail on such a claim, the petitioner must show both that counsel's performance was deficient, and that the petitioner suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In the context of a petition for habeas corpus, where the state court has already considered the petitioner's claims of ineffective assistance of counsel under a standard clearly established by federal law, "its decision must be respected unless 'unreasonable.'" *Holman v. Gilmore*, 126 F.3d 876,

881 (7th Cir. 1997) (*quoting* 28 U.S.C. § 2254(d)(1)). As the Seventh Circuit explained, "*Strickland* builds in an element of deference to counsel's choices in conducting the litigation; § 2254(d)(1) adds a layer of respect for a state court's application of the legal standard." *Id.*

3. Analysis

> 3.1 Trial Counsel's Failure to Object to Homman's Testimony Reading Her Written Statement

Nash asserts that his trial counsel was ineffective when he failed to object to the prosecutor's request that Homman read into the record a written statement she gave to the police on May 13, 2010. Homman read the following:

> After [Nash] beat me up the first time, he left. The police came. And then he came back again. The second time he came back, it was about 10 p.m. He has a key, so he just walked right in. He walked in and started arguing. I asked him why he smashed my cell phone. He asked me why the cops were there. He was very belligerent, yelling and screaming. He even went—he then went into the hallway. He was acting crazy. I know he has been drinking all day. I tried to calm him down. I told him to go to sleep. He doesn't like it when I suggest things. He yelled, don't tell me what to do. That is when he blasted me. He punched me right in the face with a closed fist. After he hit me, he got his stuff together and left. All the rest, the bruising I have on me is from when he beat me on Monday. He also choked me on Monday. He applied pressure to my neck for about 5 seconds and it impended (sic) my breathing a little bit. I never gave [Nash] permission to hit me or beat me. What he did to me hurt me physically and mentally.

*Nash*, 2011AP844-CR at ¶ 8 (parenthesis and brackets in original). Among other points of analysis, the Court of Appeals concluded Nash was not prejudiced by the statement's admission because the rest of the record before the jury was sufficient to support the jury's verdict. *Id.* at ¶ 10.

Page 4 of 12

Case 2:12-cv-00739-JPS    Filed 04/03/13    Page 4 of 12    Document 19

The standard of review for ineffective assistance of trial counsel claims in a habeas petition requires this court to defer to the state courts' analysis unless it is an "unreasonable" application of *Strickland*. *Holman*, 126 F.3d at 881; 28 U.S.C. § 2254(d)(1). Nash argues that his trial counsel was deficient in allowing inadmissible hearsay to be read as evidence to the jury. (Brief in Support at 4). However, Nash presents no argument to satisfy the second prong of *Strickland*, which requires a showing of prejudice. All of his arguments about the impropriety of this evidence go to counsel's alleged deficiency in not objecting to this evidence. (Petition at 8; Brief in Support at 4). This court concludes that the Court of Appeals was reasonable in determining that relief is not warranted absent satisfaction of both prongs of *Strickland*. Nash has not shown that the state courts unreasonably applied this established federal law and, therefore, a writ of habeas corpus will not issue on this point.

> 3.2 Trial Counsel's Failure to "Adequately Object" To Officer Ramos' Testimony

Nash's second ground for relief is that his trial counsel was ineffective in failing to "adequately object" to Officer Ramos' testimony that Homman told him Nash broke her cell phone. (Petition at 3). The exchange at trial during the prosecution's direct examination of Officer Ramos proceeded as follows:

> PROSECUTION:
> What were your observations of [Homman] that day?
>
> A: Um, well, when I walked into the apartment, she was rather upset. She was crying, emotional. And I just said to her, hey, what's going on? What can I do for you? Why are you crying? And she was very upset. She went

> on to tell me that she was just involved with a disturbance with Calvin, her boyfriend Calvin Nash.

Q: Okay. And did she give you any information about that disturbance?

DEFENSE COUNSEL:
> Your Honor, object. The witness already testified to that, the prior witness, Ms. Homman. This Officer's observations are relevant. But not to what she– not to what Ms. Homman already testified to.

THE COURT: Are you saying it's hear–

DEFENSE: Hearsay.

THE COURT: –hearsay? Do you want to argue that it falls within an exception or it's not hearsay?

PROSECUTION: Your Honor, at this time, no, I will withdraw the question.

THE COURT: Okay.

PROSECUTION: Now, as you spoke with [Homman], did she indicate if she'd had any property damaged?

A: Yes. She told me that day that [Nash] smashed her cell phone.

Q: And was she able to show you or did you observe anything that would support that?

A: Yes, she told us everything actually, the disturbance happened outside. And she said, she told me the sidewalk where it was and everything. And after I was done with my initial interview with her, I asked her to

> go outside with me. And exactly where she showed me was a cell phone broken in several pieces all over the sidewalk and on actually on the grass.
>
> Q: Okay. And did she indicate whether that was her cell phone?
>
> A: Yes, she said it was hers.
>
> Q: Okay. And you stated that there were several pieces. Was the phone workable?
>
> A: No. We tried to pick it up the best we could. We were looking actually for the Sim card, which is the memory piece of it, for her. So, that if she ever gets a new phone, you know, that's what she needed for a phone number and to activate it. We were looking for that and just trying to put it all back together for her; but it wasn't working.
>
> Q: So, the phone at that point was not going to be able to be used again?
>
> A: No, it was not.

(TR 7/21/10 (Docket #14-10) at 157:25-159:23). Shortly thereafter, Nash's counsel objected, offering the "same line of objection that I raised." (TR 7/21/10 at 160:6-7). The trial court excused the jury and then permitted the prosecution to lay further foundation for the Officer's testimony. (TR 7/21/10 at 160:14-19). On questioning from the prosecution, Officer Ramos testified that the police received a call around 5:30 p.m., and that he responded immediately, arriving there "within 3 to 4 minutes" and taking "a minute or two to walk up to the apartment door." (TR 7/21/10 at 164:22-24, 165:1). Ramos testified that Homman was "emotional and visibly upset," and that she was "crying, sobbing." (TR 7/21/10 at 164:3-5, 15). The court then

indicated it was "inclined to say [the testimony about the cell phone is] an excited utterance." (TR 7/21/10 at 165:14-16). As the court explained, Homman's statement regarding the cell phone was made shortly after the altercation, and she was under the stress and excitement caused by the startling event. (TR 7/21/10 at 165:14-20). The court offered the defense an opportunity to question Officer Ramos further on this point. (TR 7/21/10 at 165:14-16.) Defense counsel stated that he had no questions for the Officer, but he renewed his objection that the testimony is hearsay. (TR 7/21/10 at 165:22, 166:4). The court overruled the objection. (TR 7/21/1- at 166:5).

The Court of Appeals determined that, even assuming Nash's counsel was deficient, Nash was not prejudiced by this testimony. *Nash*, 2011AP844-CR at ¶ 11. The court noted several factors, including: (1) Officer Ramos did not vouch for Homman's credibility, but merely relayed what she told him; (2) Officer Ramos testified that he personally saw a smashed cell phone on the sidewalk; and (3) Homman also testified that Nash smashed the phone. *Id.* at ¶¶ 11-12. In light of this record, the Court of Appeals determined that Officer Ramos' testimony did not undermine confidence in the guilty verdict. *Id.* at ¶ 12.

As above in Section 3.1, the court will review the Court of Appeals' analysis to determine whether it is a reasonable application of *Strickland*. In his materials before this court, Nash argues that his counsel was ineffective because the error prejudiced him. He explains, "If the excited utterance rule was properly used the charge of criminal damage to property (repeater domestic abuse) would have been throw [sic] out." (Brief in Support at 4.) On this record, the court can only conclude that the Court of Appeals reasonably applied federal law. To show prejudice, Nash "must show that there is a

Case 2:12-cv-00739-JPS   Filed 04/03/13   Page 8 of 12   Document 19

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Nash argues that the charge for criminal damage to property would have been thrown out, had the court excluded Officer Ramos' testimony on Homman's statement. However, as the Court of Appeals noted, the record contained testimony from Homman that Nash broke her cell phone,[3] and testimony from Officer Ramos that he helped Homman collect pieces of broken cell phone from the sidewalk. The jury was, of course, free to accept or reject this testimony. However, Nash cannot show that Officer Ramos' repetition of Homman's statement would have lead to a dismissal of the charge because, even without Ramos' testimony, the record was sufficient to at least put the issue to the jury. This is Nash's only argument in support of a finding of prejudice, an essential prong of the *Strickland* test. Because this argument fails to show prejudice, this court concludes that the Court of Appeals' resolution of this point reflected a reasonable application of federal law. A writ of habeas corpus will not issue on this point.

    3.3    Trial Counsel's Failure to Object to the Court's Instruction About Juror Notes

Nash's final ground for relief is that his counsel was ineffective because he did not object to the Court's instructions about the use of their notes during deliberations. (Petition at 7). In the trial court's opening instructions to the jury, the court stated: "Your notes should be kept confidential during the trial. […] The purpose of your notes is obvious. If you

---

[3] Homman testified "And um, [Nash], he tried to pull a knife on me. And I, I told– and I ran out of the house." […] "…and I tried to call my son to come pick me up." […] "And he took my phone and smashed it." (TR 7/21/10 at 90:23-24, 91:3-4, 91:6).

have a dispute as to what a witness may have said or a lack of recollection, they might help you resolve that." (TR 3/21/10 at 68:21, 69:7-9). Before the Court of Appeals, Nash argued that counsel was ineffective in not objecting to this instruction because the instruction could be read as "conveying to jurors that the notes could serve as independent evidence." *Nash*, 2011AP844-CR at ¶ 14. In considering this point, the Court of Appeals reasoned that, even if it assumed that the failure to object was deficient performance, Nash could not show that this deficient performance prejudiced him. *Id.* The court explains:

> …Nash fails to establish prejudice as he has not shown that any juror actually took notes, much less relied on them as evidence. At most, Nash can only speculate that a juror may have relied on his or her notes in a manner inconsistent with the pattern jury instruction. A showing of prejudice requires more than speculation; the defendant must affirmatively prove prejudice.

*Id.* (*citing State v. Wirts*, 500 N.W.2d 317 (Wis. Ct. App. 1993)).

In his filings before this court, Nash asserts that this instruction violated his Constitutional rights, but he offers no cohesive explanation to support his assertion. *See* Petition at 7, Brief in Support at 3-4. As above, to show prejudice, Nash "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Nash's filings with this court do not attempt to show that the Court of Appeals was unreasonable in its determination that he had not met this burden. The court concludes that the Court of Appeals was eminently reasonable to conclude that Nash has not shown any prejudice, and that Nash's argument must fail because he cannot establish this required element of *Strickland*. On this point and on the other two points presented in Nash's Petition, the Court of Appeals correctly

articulated a well-established rule of federal law, and then reasonably applied the law to the facts of Nash's case. This court is, therefore, obliged to deny Nash's petition for writ of habeas corpus.

4.  Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), the applicant must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). While Rule 11(a) permits a district court to direct the parties to submit arguments on whether a certificate of appealability should issue, additional argument is not necessary here. Given the record before the court, no reasonable jurist would find it debatable whether this court was correct in its ruling on the present matter. As a consequence, the court must deny a certificate of appealability as to Nash's petition.

Accordingly,

IT IS ORDERED that Nash's "Petition for Writ of Habeas Corpus" (Docket #1) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that a certificate of appealability as to Nash's Petition be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that this case be and the same is hereby DISMISSED.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 3rd day of April, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge